# United States Court of Appeals for the Federal Circuit

---

**ACOUSTIC TECHNOLOGY, INC.,**
*Appellant*

**v.**

**ITRON NETWORKED SOLUTIONS, INC.,**
*Appellee*

---

2019-1059, 2019-1060

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-01030, IPR2017-01031.

---

Decided: February 13, 2020

---

MICHELLE ARMOND, Armond Wilson LLP, Newport Beach, CA, argued for appellant. Also represented by DOUGLAS R. WILSON, Austin, TX.

ADAM R. BRAUSA, Durie Tangri LLP, San Francisco, CA, argued for appellee. Also represented by MARK A. LEMLEY.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

On September 8, 2017, the Patent Trial and Appeal Board instituted *inter partes* review based on two petitions filed by Silver Spring Networks, Inc. Nine days after institution, Silver Spring agreed to merge with Itron, Inc., an entity undisputedly time-barred under 35 U.S.C. § 315(b). Silver Spring and Itron completed the merger during the proceedings. The Board later issued a final written decision and found the challenged claims unpatentable. On appeal, Acoustic asks that we vacate the Board's final written decision on grounds that the *inter partes* review was time-barred due to Silver Spring's and Itron's merger-related activities. Acoustic also challenges the Board's obviousness findings. Because we find that Acoustic waived its time-bar and obviousness arguments, we affirm.

BACKGROUND

I. '574 Patent and "WAN Means"

Acoustic Technology, Inc. ("Acoustic") owns U.S. Patent No. 5,986,574 ("the '574 patent"), which relates to communications systems for utility providers to remotely monitor groups of utility meters, e.g., electricity meters.[1] According to Acoustic, the claimed inventions were "a considerable improvement over prior art designs that called for the additional expense of installing supporting communications equipment and infrastructure." Central to this appeal is the "WAN means" claim limitation, which relates to the

---

[1]    The '574 patent is a parent of continuation U.S. Patent Application No. 09/703,298, which issued as U.S. Patent No. 6,509,841. Acoustic filed a related appeal involving U.S. Patent No. 6,509,841 on the same day it filed this appeal. *Acoustic Tech., Inc. v. Itron Networked Solutions, Inc.*, Case No. 2019-1061. We heard oral arguments in this case and Case No. 2019-1061 on December 4, 2019. We have issued opinions in both cases simultaneously.

systems' ability to transmit information over a Wide Area
Network ("WAN").

In one embodiment, shown in Figure 1 below, a plurality of "servicing means 16" (e.g., on-site utility meters) communicate with a "relay means 14," which in turn communicates with a "control means 12" (e.g., a remote computer at a utility facility). J.A. 202, Fig. 1; J.A. 205–206 at 2:27–3:32. The relay means communicates with the plurality of servicing means over a Local Area Network. The relay means and the control means, on the other hand, communicate over a wide area network via a "WAN means."



FIG. 1

Claim 16 of the '574 patent, reproduced below, is representative of the claims at issue on appeal and recites a relay means in the form of a "concentrator meter":

16. A concentrator having means for relaying communication between a plurality of metering devices and at least one control station comprising:

> concentrator comprising a meter and
> means for monitoring an amount of usage
> of a medium;
>
> LAN means for receiving data from said
> plurality of metering devices over a local
> area network;
>
> ***WAN means*** for transmitting data associ-
> ated with both said plurality of metering
> devices and said monitoring means over
> a wide area network to said at least one
> control station; and
>
> a housing comprising a meter receiving
> said monitoring means, said LAN means
> and said WAN means.

J.A. 209 at 9:22–35 (emphasis added).

## II. IPR Petitions

In March 2010, Acoustic sued Itron Inc. ("Itron") for infringement of the '574 patent. Acoustic and Itron later agreed to settle the suit. As part of the settlement agreement, Acoustic licensed the '574 patent to Itron. As a result of the lawsuit, Itron was time-barred from seeking *inter partes* review ("IPR") of the '574 patent as of March 26, 2011. *See* 35 U.S.C. § 315(b).

Six years after suing Itron, Acoustic sued Silver Spring Networks, Inc. ("Silver Spring") for infringement of the '574 patent. In response, on March 3, 2017, Silver Spring timely filed two IPR petitions that challenge the '574 patent and that gave rise to this appeal: IPR2017-01030 and IPR2017-01031 ("the petitions").

Several weeks before Silver Spring filed the petitions, Silver Spring and Itron began privately discussing "a potential business combination." J.A. 6556. The first contact occurred on February 12, 2017, when a representative of Itron phoned a Silver Spring board member to express

Itron's interest in a potential merger. The next day, Itron's CEO continued the discussion with a director of Silver Spring. One week later, on February 20, 2017, Itron's CEO requested a meeting with Silver Spring to discuss "a potential acquisition." J.A. 6556.

Silver Spring and Itron continued to discuss a potential merger after Silver Spring filed the petitions. Representatives from each company met on March 10, 2017, one week after Silver Spring filed the petitions, and again on April 12, 2017.

The Board instituted *inter partes* review on September 8, 2017. Nine days later, on September 17, 2017, Silver Spring and Itron agreed to merge. Itron publicly announced the agreement the next day. Silver Spring asserts that, up until the day the parties reached an agreement, Silver Spring was exploring potential business relationships with more than a dozen other companies.

Silver Spring and Itron completed the merger on January 5, 2018, while the *inter partes* review proceedings remained underway. Acoustic learned of the merger three days later. On January 17, 2018, Silver Spring filed updated mandatory notices that listed Itron as a real-party-in-interest.

The Board entered final written decisions on August 21, 2018, nearly a year after Silver Spring and Itron agreed to merge and seven months after they completed the merger. The Board's final written decisions found the challenged claims unpatentable on all three asserted grounds: obvious in view of Argyroudis, obvious in view of Argyroudis and Selph, and obvious in view of Mayo and Roach. Acoustic never raised a time-bar challenge to the Board.

Acoustic appeals the Board's final written decisions. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Acoustic raises two issues on appeal. First, Acoustic asserts that the PTAB's final written decisions should be vacated because the underlying IPR proceedings are time-barred under 35 U.S.C. § 315(b). Second, Acoustic challenges the Board's obviousness findings on grounds that the Board erroneously construed "WAN means" of claims 3, 16, 17, and 20 of the '574 patent.

## I. Time-Bar

Acoustic argues that we must vacate the Board's final written decisions because the *inter partes* reviews were time-barred under 35 U.S.C. § 315(b). Section 315(b) provides:

> An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, ***real party in interest***, or privy of the petitioner is served with a complaint alleging infringement of the patent.

35 U.S.C. § 315(b) (emphasis added). Congress included the "real parties in interest" provision in § 315(b) to "safeguard patent owners from having to defend their patents against belated administrative attacks by related parties." *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1350 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1366 (mem.) (2019).

The Board evaluates § 315(b) at the time it decides whether to institute proceedings. *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1315 (Fed. Cir. 2019). In *Power Intergrations*, we held that the real-party-in-interest determination must consider all relationships that arise before the date of institution, including relationships that arise after the petition filing date. *Id.* at 1314–15 ("[Section] 315(b) requires consideration of privity and [real-party-in-interest] relationships

arising after filing but before institution."). We expressly declined to decide whether the Board is required to reevaluate § 315(b) in view of a new real-party-in-interest that arises after institution. *Id.* at 1314 n.8 ("We do not address the impact of a change in RPI . . . occurring after institution.").

Acoustic argues that the underlying IPRs are time-barred because Itron was a real-party-in-interest "both before and after the IPRs were instituted." Appellant Br. 47. Before institution, Acoustic asserts, Itron was a real-party-in-interest because "the executives met; Itron conducted due diligence; the details of the merger were discussed; and the formal 'merger agreement' was prepared and negotiated." Reply Br. 16–17. After institution, Acoustic contends, Itron was "unquestionably" a real-party-in-interest because Silver Spring became a wholly-owned subsidiary of Itron, and Itron "controlled [Silver Spring] and had a significant interest" in the *inter partes* review proceedings. *Id.* at 22–23.

Acoustic contends that Silver Spring's post-institution status as a real-party-in-interest is important because "institution is not a static decision" and the Board has the authority to reevaluate § 315(b) when a real-party-in-interest arises after institution. Reply Br. 20–21. The Board's ability to assess § 315(b) after institution is necessary, Acoustic explains, in order to avoid an "end-run around Section 315(b)" where parties delay their corporate deals until shortly after institution and avoid the consequences of the time-bar.

Itron advances several arguments in response to Acoustic's time-bar arguments. First, Itron argues that Acoustic waived its time-bar challenge of the IPRs because Acoustic did not raise those arguments before the Board. Second, Itron argues the time bar of § 315(b) does not apply to the underlying IPR proceedings because Itron merged with Silver Spring after the Board instituted the

proceedings. Third, Itron asserts that the Board is not authorized to reevaluate § 315(b) after institution and that Acoustic's proposed reading of the statute "offers no logical stopping point for the Board to assess the time bar." Appellee Br. 36.

We hold that Acoustic has waived its time-bar challenge to the IPRs because it failed to present those arguments before the Board. We retain case-by-case discretion over whether to apply waiver. *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1342 n.8 (Fed. Cir. 2018). We have "frequently declined to hear arguments that the applicant failed to present to the Board." *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004). When a party raises arguments on appeal that it did not raise to the Board, they "deprive[] the court of the benefit of the [Board's] informed judgment." *In re NuVasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (explaining the importance of "a comprehensive record that contains the arguments and evidence presented by the parties").

There is no dispute that Acoustic failed to raise § 315(b) time-bar arguments before the Board. Acoustic became aware of the merger as of January 8, 2018, more than seven months before the Board issued its final written decisions. J.A. 7026. Yet, Acoustic does not provide any reason for its failure to challenge the proceedings as time-barred. Because Acoustic failed to present its time-bar arguments to the Board and "deprive[d] the court of the benefit of the [Board's] informed judgment," we exercise our discretion to apply waiver. *In re NuVasive*, 842 F.3d at 1380.

Acoustic attempts to excuse its waiver by asserting, without legal authority, that the time-bar is "jurisdictional" and thus "may be raised at any time." Appellant Br. 29. We disagree.

Acoustic is correct that we have previously described the time-bar restrictions on the Board's institution powers as "jurisdictional." Appellant Br. 29–32 (citing *Click-to-*

*Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1325 (Fed. Cir. 2018); *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364, 1373 (Fed. Cir. 2018)). But our application of waiver differs between challenges to an agency's "jurisdiction" and challenges to a federal court's jurisdiction. *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1362 (Fed. Cir. 2018). As we explained in *PGS*:

> Even if the Board could be said to have acted "ultra vires" in refusing to institute reviews of some claims and grounds . . . the Board's error is waivable, not one we are required to notice and act on in the absence of an appropriate request for relief on that basis. Several courts of appeals have recognized the same for a challenge to an agency's "jurisdiction," after the Supreme Court, in *City of Arlington v. FCC*, rejected a distinction between agency "jurisdiction" errors and other errors for certain deference purposes . . . ."

*Id.* (compiling cases) (citations omitted). We hold that time-bar challenges under § 315(b) are not immune from waiver.

To permit litigants to raise § 315(b) time-bar challenges for the first time on appeal would encourage what the Supreme Court has referred to as "sandbagging," i.e., "suggesting or permitting, for strategic reasons, that the [tribunal below] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 895 (1991). Here, had Acoustic raised a time-bar challenge before the Board, the Board was fully empowered to dismiss the petitions for untimeliness if the challenge had merit. But allowing Acoustic to raise a time-bar challenge for the first time on appeal would afford it a significant and unfair advantage: Acoustic could wait for the Board's decision on the merits, which if favorable would

have estoppel effect, and then challenge the Board's juris-
diction on appeal only if the Board finds the claims obvious.

Although we do not address the merits of Acoustic's
time-bar argument, we note Acoustic's concerns about the
concealed involvement of interested, time-barred parties.
But because Acoustic never raised this issue to the Board,
we decline to resolve whether Itron's pre-merger activities
render it a real-party-in-interest, or whether the Board has
any authority or obligation to reevaluate § 315(b) post in-
stitution.

## II. "WAN Means"

Acoustic argues that we should reverse the Board's ob-
viousness findings on grounds that the Board erroneously
construed the "WAN means" term.  Specifically, Acoustic
argues that the Board erred by defining the corresponding
structure for "WAN means" as "any device."  The Board
should have instead limited the corresponding structure to
a "conventional WAN radio," Acoustic explains, because
that is the only structure disclosed in the specification.
Acoustic asserts that because the Board erroneously con-
strued "WAN means," it "never identified a conventional
WAN radio in the prior art," and its finding that the prior
art discloses a "WAN means" is not supported by substan-
tial evidence.  Appellant Br. 57–63 ("[T]here is no substan-
tial evidence establishing that the prior art contains 'a
conventional WAN radio' or its equivalent under the cor-
rect claim construction.").

Itron contends that the obviousness arguments Acous-
tic makes to this Court rely on a different construction of
"WAN means" than what Acoustic argued below.  As a re-
sult, Itron explains, the Board has not yet addressed the
non-obviousness arguments that Acoustic raises for the
first time on appeal.  We agree.

Before the Board, Acoustic argued non-obviousness by
asserting that the prior art did not teach a conventional

WAN radio capable of transmitting over *publicly available* Wide Area Networks. J.A. 512, J.A. 3301. Acoustic distinguished the asserted prior art references based on their failure to disclose a system for transmitting over *publicly available* WAN. For example, Acoustic argued that the way data is exchanged in Argyroudis "is different than exchanging data over a publicly available WAN." J.A. 512. Acoustic likewise argued that the "transceiving means in Mayo . . . would not be a WAN means for transmitting over a publicly available wide area network." J.A. 3301. The Board considered and rejected these arguments. J.A. 37; J.A. 84.

Acoustic's argument on appeal is new. Rather than arguing that the prior art fails to disclose a conventional radio capable of transmitting over publicly available WAN, Acoustic now argues that the prior art fails to disclose *any* conventional WAN radio. Appellant Br. 50 (asserting that "there is no substantial evidence establishing that the prior art contains 'a conventional WAN radio' or its equivalent"). Acoustic's argument on appeal makes no mention of publicly available WAN.

Because Acoustic never presented to the Board the non-obviousness arguments it now raises on appeal, we find those arguments waived. *In re Watts*, 354 F.3d at 1367 (explaining that we have "frequently declined to hear arguments that the applicant failed to present to the Board"); *In re NuVasive, Inc.*, 842 F.3d at 1380 (explaining that failure to raise arguments to the Board "deprives the court of the benefit of the Board's informed judgment."); *see, e.g.*, J.A. 576–578.

## CONCLUSION

We have considered Acoustic's other arguments and find them unpersuasive. We affirm.

### AFFIRMED

12        ACOUSTIC TECHNOLOGY, INC. v. ITRON NETWORKED
                                                    SOLUTIONS

## COSTS

No costs.